UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL HOME LOAN
MORTGAGE CORPORATION,

       Plaintiff,

v.

PAUL J. MONTAGUE, et al.,

       Defendants,

FEDERAL HOUSING FINANCE
AGENCY,

       Intervenor.
_____/

File No. 1:13-CV-1162

HON. ROBERT HOLMES BELL

## OPINION

This is a foreclosure case removed to this Court from the 86th District Court of the State of Michigan, pursuant to 28 U.S.C. § 1442 and 12 U.S.C. § 1452(f). Following removal, Defendants filed Counter-Claims and Third-Party Claims with this Court. (ECF No. 7.) The matter is presently before the Court on Intervenor Federal Housing Finance Agency's Motion to Dismiss (ECF No. 15) and on Counter-Defendant Federal Home Loan Mortgage Corporation's and Third-Party Defendants BAC Home Loans Servicing, Bank of America, and Mortgage Electronic Registration Systems's Motion to Dismiss (ECF No. 16). Both sides have had an opportunity to respond and reply to the other's arguments, and the motions are ready for disposition. For the following reasons the Court will grant the motions and dismiss with prejudice Defendants' Counter-Claims and Third-Party Claims.

I.

On May 11, 2007, Defendants/Counter-claimants/Third-Party Plaintiffs Paul J. Montague and Sharron D. Montague (the Montagues) executed a promissory note for $126,750 and a mortgage in favor of Third-Party Defendant Mortgage Electronic Registration Systems (MERS). MERS acted solely as the nominee for the lender, its successors, and assigns. MERS assigned the mortgage to Third-Party Defendants Bank of America and BAC Home Loans Services (BOA) on August 8, 2011. From that date forward, BOA was both the holder of the mortgage and the servicer of the debt.

In February 2010, Paul Montague was laid off, and the Montagues began to fall behind in their payments. The Montagues contacted the lender to request assistance with their mortgage. They began to send in reduced payments, but the lender rejected these as insufficient.

The Montagues hired a "purported mortgage assistance specialist," non-party Toni Avery to help them get their mortgage modified in June 2011. Over the course of that summer, the Montagues believe that Ms. Avery attempted to modify their mortgage by contacting the lender and submitting their financial information. In August 2011, the Montagues received a letter from BOA's counsel, non-party Trott & Trott (Trott), stating that a mediation conference call had been scheduled for November 2011.

As a result of that conference call, the Montagues and BOA entered into what the Montagues characterize as a Temporary Modification Agreement and what BOA characterizes as a Special Forbearance Agreement. Regardless of its name, the Agreement provided that the Montagues would make reduced payments for three months. Beginning March 1, 2012, BOA would either (1) require the Montagues to resume their normal payments; (2) require full reinstatement of the loan; or (3) in its sole discretion offer a permanent loan modification or other payment assistance. (Agreement, ECF

No. 17-3.) The Agreement also provided that any foreclosure proceedings against the subject property would be postponed, but not cancelled. The Montagues signed the Agreement and returned it to BOA through Trott. The Montagues made the required payments from November 2011 to January 2012.

In February 2012, Toni Avery spoke to a representative of BOA. BOA requested additional financial information, but did not mention a permanent loan modification stemming from the Agreement. BOA continued to request financial information throughout the remainder of 2012. The Montagues do not allege that they brought their loan current at any time during this period.

In November 2012, the Montagues received a letter stating that they had missed a conference call and that their mortgage would be foreclosed. The Montagues contacted Trott, who said they had scheduled a conference call with Toni Avery, but she did not attend. The notice stated that the their house would be sold at auction on December 14, 2012. The Montagues later learned that Ms. Avery was incarcerated at the time on charges of embezzlement.

Throughout December 2012 and January 2013, the Montagues continued to attempt loan modification with BOA through Trott. They continued sending in financial information and a hardship letter. The sheriff's sale was postponed from its December 14, 2012, date. BOA and Trott advertised the sale with four successive newspaper advertisements and posted a notice on the premises. On January 11, 2013, the property was sold at the sheriff's sale for $101,700 to Counter-Defendant Federal Home Loan Mortgage Corporation (FHLMC). The redemption period expired on July 11, 2013. The Montagues remain in possession of the property and argue that the foreclosure-by-advertisement was illegal and should be set aside.

3

II.

A.     **Motion Standards**

In reviewing a Rule 12(b)(6) motion to dismiss, the Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff,'" but "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). Under the federal notice pleading standards, a complaint must contain "a short and plain statement of the claim showing how the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this statement is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. 678. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc.*

*v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 677), *cert. denied*, 132 S. Ct. 1583 (2012). Where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Further, under Rule 10(c), the court can consider the exhibits attached to the complaint without converting defendants' Rule 12(b)(6) motion into a motion for summary judgment. Fed. R. Civ. P. 10(c); *see Koubriti v. Convertino*, 593 F.3d 459, 462 n.1 (6th Cir. 2010) ("Documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss."). "In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).

A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Saldate v. Wilshire Credit Corp.*, 686 F. Supp. 2d 1051, 1059 (E.D. Cal. 2010) (quoting *Sumner Peck Ranch v. Bureau of Reclamation,* 823 F.Supp. 715, 720 (E.D.Cal.1993)); *see also N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454–55 (7th Cir. 1998) (noting that a "plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.").

"The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of the claim. Factual allegations alone are what matters." *Quinn-Hunt v. Bennett Enterprises, Inc.*, 122 F. App'x 205, 207 (6th Cir. 2005) (quoting *Albert v. Carovano*, 851 F.2d 561, 571, n. 3 (2d Cir.1988)).

**B.     Analysis**

As an initial matter, FHLMC, BOA, and MERS argue that the Montagues lack standing to challenge the foreclosure process because the redemption period has expired and the Montagues failed to file their Counter-Complaint before the redemption period expired. The redemption period following a foreclosure is six months after the date of the sale. Mich. Comp. Laws § 600.3240. An extension of this period is barred absent a clear showing of fraud or irregularity in the foreclosure process. *Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App.1969). As this Court has previously noted, "Michigan courts have determined that, after the expiration of the redemption period, a mortgagor does not have standing to bring an action to quiet title or challenge the foreclosure proceedings." *Belanger v. Bank of N.Y. Mellon*, No. 1:12-CV-1055, 2013 WL 318294, at *4 (W.D. Mich. Jan. 28, 2013). However, " The Supreme Court [of Michigan] has long held that the mortgagor may hold over after foreclosure by advertisement and test the validity of the sale in the summary proceeding." *Mfrs. Hanover Mortg. Corp. v. Snell*, 370 N.W.2d 401, 404 (Mich. Ct. App. 1985).

Here, the foreclosure-by-advertisement took place on January 11, 2013. Absent tolling due to fraud or irregularity, the redemption period expired on July 11, 2013. However, in the present case, although Count I is titled as an action to quiet title, the Montagues are not "bringing an action" as much as they are challenging "the validity of the sale" in response to the proceedings *brought against them*. The Court holds, therefore, that the Montagues have standing to bring their counter-claims.

The Montagues assert four causes of action in their Counter-Claim/Third-Party Complaint. The Court will address these in turn.

1.        Counts I, III, and IV: Quite Title under Mich. Comp. Laws § 600.2932; Illegal/Improper Foreclosure; and Violation of Mich. Comp. Laws § 600.3205

Under Mich. Comp. Laws § 600.2932, "[a]ny person . . . who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action . . . any other person who claims . . . any interest inconsistent with the interest claimed by the [claimant.]" The Montagues claim superior title to FHLMC based on alleged deficiencies in the foreclosure process.

Foremost among the Montagues' allegations of wrongdoing is that BOA failed to explore modification of the Montagues' mortgage. This allegation appears in Counts I and IV, where the Montagues allege that MERS, BOA, and FHLMC violated Mich. Comp. Laws § 600.3205 by failing to modify their mortgage. A full two pages of the Counter-Complaint recites verbatim the version of Mich.Comp. Laws § 600.3205a that was effective during the events in question.[1] The only specific provision of section 600.3205a that the Montagues allege MERS, BOA, and FHLMC violated is subsection(g), which provided, "if the borrower and [the loan servicer] do not agree to modify the mortgage but it is determined that the borrower meets criteria for a modification under section 3205c(1) . . . the foreclosure of the mortgage will proceed before a judge instead of by advertisement." Mich. Comp. Laws § 600.3205a(g) (repealed).

In turn, section 600.3205c(1) (also since repealed) required a loan servicer to determine if the borrower was qualified for a loan modification. Any loan modification program was required to have a target debt-to-income ratio of 38%, achieved through one or more of the following: an interest

---

[1]Mich. Comp. Laws 600.3205a was repealed by Mich. Pub. Act 2014, No. 521, effective June 30, 2013. Mich. Comp. Laws 600.3205, which the Montagues cite, is a definitions section that applies to the sections 600.3205a through 600.3205d, and was also repealed. As explained above, the Montagues' failure to cite the correct statute is not a basis for dismissing their claims under Rule 12(b)(6).

rate reduction; extension of the loan period up to 40 years from the date of modification; deferral of some portion of the principle; or reduction or elimination of fees.

The Montagues have failed to plead facts that, taken as true, would show they are entitled to relief. The Counter-Complaint is replete with allegations that show both that the Montagues and BOA worked to modify the loan, but that a permanent agreement was never reached. Further, the Montagues allege no facts and do not argue that they were qualified for a loan modification within the meaning of section 600.3205c(1).

Even if the Montagues had pled a violation of section 600.3205c, the relief they request—setting aside the foreclosure sale—is not available. *See Thompson v. JPMorgan Chase Bank, N.A.*, 563 F. App'x 440, 443–44 (6th Cir. 2014) (rejecting a similar claim, and noting that Michigan courts have ruled the exclusive remedy for violations of sections 600.3205–3205d is conversion of a foreclosure-by-advertisement to a judicial foreclosure).

The Montagues' remaining claims of irregularity in the foreclosure process stem from a convoluted and ultimately circular line of reasoning contained in the allegations of their Counter-Complaint. It appears that the Montagues are alleging that FHLMC foreclosed on their property, and not BOA. The Montagues further allege that a foreclosure in FHLMC's name violates its own policies. Finally, the Montagues allege that there is no chain of title showing that the mortgage was assigned to FHLMC prior to the foreclosure, and thus there was no proper conveyance to FHLMC. The Montagues' allegations are clearly contradicted by exhibits attached to the complaint, and by those submitted by FHLMC, BOA, and MERS that are referred to in the Counter-Complaint.

Specifically, the exhibits clearly show—and the parties do not disagree—that prior to the foreclosure, the mortgage and the note had been assigned to BOA. (*See* Assignment, Ex. 2, ECF No.

7.) Where the facts diverge from the Montagues' allegations is the in the foreclosure process itself. The Notice of Sale clearly shows BOA is the party foreclosing. (Ex. 3, ECF No. 7.) The Sheriff's Deed shows that at the auction, FHLMC purchased the Montagues' property. (Ex. 4, ECF No. 7.) The Montagues' assertion that FHLMC was the party that foreclosed their mortgage is contradicted by the exhibits they attached to their Counter-Complaint, and the Court therefore does not accept them as true.

To the contrary, nothing in the Montagues' counter-complaint suggests that there was anything irregular or unlawful about the foreclosure-by-advertisement of their property. The Montagues have failed to state a claim upon which relief can be granted with respect to Counts I, III, and IV of their Counter-Complaint, and the Court will therefore dismiss these claims with prejudice.

2.     Count II: Violation of 5th and 14th Amendment Due Process Rights

In Count II, the Montagues allege that because Intervenor Federal Housing Finance Agency (FHFA), the conservator of FHLMC, is a government agency, and because there is no end date for the conservatorship, FHLMC was a state actor.

Contrary to the Montagues' assertions, binding authority from this circuit holds that (1) FHLMC is not a state actor who can be held liable for violations of the Due Process Clause; and (2) a purchaser at a foreclosure auction is not a party to the foreclosure itself, and thus cannot be held liable for defects in the foreclosure proceeding. *Mik v. Fed. Home Loan Mortg. Corp.*, 743 F.3d 149, 168 (6th Cir. 2014). Further undermining the Montagues' position is the recognition by Michigan courts that foreclosure-by-advertisement is an equitable action, not a judicial proceeding, does not involve state action of any kind, and is held to be a remedy assumed in the contract between the mortgagor and mortgagee. *See Snell*, 370 N.W.2d at 403.

The Montagues' own legal arguments are likewise flawed. First, the Montagues cite persuasive authority holding that FHLMC is *not* a state actor. (Resp. 21, ECF No. 27 (citing *Am. Bankers Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 75 F.3d 1401 (9th Cir. 1996)).) Second, even assuming FHLMC is a state actor, the Montagues have failed to present any authority for the proposition that a foreclosure-by-advertisement violates their procedural due process rights. In sum, the Montagues have failed to state a claim for which relief can be granted under the Due Process Clause, and the Court will therefore dismiss with prejudice Count II of their Counter-Complaint.

### III.

The Montagues present further spurious arguments, bordering on frivolous, in support of their legal theories, but the Court need not reach these in order to decide the motions on the merits. For the foregoing reasons, the Court holds that the Montagues have failed to state a claim for which relief can be granted. The Court will therefore dismiss with prejudice the Montagues' Counter-Claims and Third-Party Claims.

The Court will enter an Order consistent with this Opinion.


Dated: September 2, 2014              /s/ Robert Holmes Bell
                                      ROBERT HOLMES BELL
                                      UNITED STATES DISTRICT JUDGE